UNITED STATES v. GROSJEAN et al.

(Circuit Court of Appeals, Ninth Circuit. February 6, 1911.)

No. 1,787.

UNITED STATES (§ 75*)—CONTRACTS—ACTION FOR· BREACH—DEFENSES.

One of the defendants contracted with the United States to build two bridges; the other defendants becoming sureties on his bond for performance of the contract. Afterwards he absolutely refused to perform the contract, whereupon the Secretary of the Interior declared it annulled, and readvertised and let the contract to the lowest bidder at a higher price. It was shown that the two contracts covered precisely the same work and that the price paid was reasonable. *Held* that, the contract having been broken by defendant, the fact that the Secretary declared it "annulled" was immaterial, and did not deprive the government of the right to recover damages for its breach, equal to the additional sum it was compelled to pay.

[Ed. Note.—For other cases, see United States, Dec. Dig. § 75.*]

In Error to the Circuit Court of the United States for the Northern Division of the Southern District of California.

Action at law by the United States against Frank Grosjean, J. D. Westfall, and J. C. Grosjean. Judgment for defendants, and plaintiff brings error. Reversed.

A. I. McCormick, U. S. Atty.
John A. Wall, for defendants in error.

Before GILBERT and ROSS, Circuit Judges, and HANFORD, District Judge.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

ROSS, Circuit Judge. This was an action by the government upon a bond given to secure the performance of a certain contract entered into by the defendant in error, Frank Grosjean, as contractor for the building of two certain bridges, hereinafter referred to. The amended complaint, upon which the action was tried, alleged, among other things, the advertisement for bids for the building of the bridges, the making and delivery of a bid in writing by Frank Grosjean, the acceptance of his bid by the government, the due and legal execution of a contract for the building of the bridges, the execution of the bond given by the contractor to secure its proper performance, and the approval thereof by the Secretary of the Interior, all of which alleged facts the answer of the defendants admitted. The contract was made and entered into June 16, 1906, by and between the United States, represented in that behalf by H. C. Benson, who was at the time Major of the Fourteenth Cavalry and acting superintendent of Yosemite National Park, as party of the first part, and the defendant in error, Frank Grosjean, as party of the second part. Article 1 of the contract is as follows:

"Article 1. That the said Frank Grosjean, party of the second part, furnishing tools and labor, shall: (1) Construct a bridge over Fall river, in Hetch-Hetchy Valley. (2) Construct a bridge over Fall river just below Lake Vernon, it being required that the approaches thereto connect with the trails running from Till-Till Valley to Lake Eleanor, passing by Lake Vernon; that is, if the bridge is built not where the present trail crosses, the contract will include the constructing of regulation trails from the bridge to the above-mentioned trail."

The contract set forth specifically the description of the bridges to be built, and the quality, quantity, and dimensions of the material to be used therein, and the manner of their construction, and further provided that the officer in charge of the Park "shall be the interpreter" of the true intent and meaning of the contract, and that his "decisions in all cases shall be final"; that the work contracted for should be commenced immediately upon the execution of the contract, and be completed not later than September 15, 1906; and that upon full and complete performance thereof by the contractor and the presentation of proper vouchers the contractor should be paid by the United States the sum of $585. The bond sued on was given by the defendant in error, Frank Grosjean, as principal, and his codefendants in error, J. D. Westfall and J. C. Grosjean, as sureties, to secure the performance by the contractor of his agreements set forth in the contract.

The amended complaint alleges that the contractor failed and refused to construct either of the bridges called for by the contract, and that on July 16, 1906, before anything had been done by him toward the construction of either of the said bridges, he abandoned the contract and refused to perform it; that subsequently other bids were advertised for by the United States, in response to which one Carter proposed to build the two bridges mentioned for the sum of $900, which bid was the lowest one received by the government, and was a reasonable price for the construction of the said bridges; and that thereafter a contract in writing in all respects similar to that

theretofore made by the government with the defendant in error, Frank Grosjean, was made with the said Carter, who duly performed it, for which he was paid by the government the contract price of $900. The damages alleged in the amended complaint to have been sustained by the government were $315, the difference in price between the two contracts, damages for the expenses incurred by the government in reletting the contract, and damages for delay. The last two alleged items of damage were waived by the government on the trial, and judgment was asked for only the difference between the amounts of the two contracts.

The proof, as well as the contracts, show that, in so far as the question here involved is concerned, the bridges called for by the two contracts were precisely the same. The trial resulted in a judgment against the government, upon motion made by the defendants to the action upon the conclusion of the government's case; the court basing its ruling upon the statement that it did so "solely upon the ground that the contract, having been annulled by the government, could not now be affirmed by the government so as to form a basis for the recovery of damages as prayed for in the amended complaint."

The evidence shows without conflict that the contractor, Grosjean, absolutely refused to complete either of the two bridges he contracted to build; saying to Maj. Benson, the officer in charge of the Park, that he would lose money by doing so, and that he could better take the chances of a lawsuit. It was after such refusal on the part of the contractor that the Secretary of the Interior, upon receiving Maj. Benson's report of that fact, declared the contract "annulled" and directed a readvertisement for bids, under which the subsequent proceedings were had.

The case in truth is the simple one of a breach of contract by the contractor, by his absolute refusal to do what he had bound himself to do, and the recognition of the fact of such breach by the Secretary of the Interior, and his direction for advertisement for other bids to do the required work. The fact that the Secretary called his action "annulling" the contract is of no consequence. The contract was already broken by the contractor, of which fact the Secretary was duly advised, and of which he was compelled to take notice, and for which breach the government is clearly entitled to damages. And as the proof showed that the two contracts were, in respect to the point involved, precisely similar, and that the second contract was for a reasonable amount, and that the material furnished and work performed under the second contract was precisely similar to that required by the first, and that the government was compelled to pay and did pay to the second contractor $900, it is plain, upon its showing, that the government was entitled to judgment for the sum demanded by it, with costs.

The judgment is reversed, and the cause remanded.